UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>HENDERSON A. JOSEPH )<br>MARCELLE L. STEPHENS )<br>)<br>        *Defendants.* )<br>) | Criminal No. 1:06-CR-00084-RJL<br>Sentencing Date: August 24, 2007 |

### SENTENCING MEMORANDUM
### SUBMITTED ON BEHALF OF MARCELLE STEPHENS

Defendant Marcelle L. Stephens, by and through undersigned counsel, hereby submits this Sentencing Memorandum, and as set forth in greater detail below, respectfully requests that the Court impose a sentence of probation, or, in the alternative, a sentence permitting home detention consistent with the purposes of the Sentencing Reform Act ("SRA"). Ms. Stephens respectfully submits that the Court should impose a probationary sentence below the applicable Sentencing Guidelines range (15 to 21 months), pursuant to 18 U.S.C. § 3553(a), based on the following reasons: (1) Ms. Stephens' minor role in the offense and the aberrant nature of her conduct; (2) Ms. Stephens' acceptance of responsibility, plea of guilty, and commitment to rehabilitation; (3) the significant passage of time since the offense, and the absence of any other criminal conduct; and (5) the devastating emotional and financial effects incarceration would have on Ms. Stephens' family.

### I.    Procedural Background

On April 5, 2006, the United States Attorney's Office for the District of Columbia filed a nine-count Indictment charging Ms. Stephens with Count 1 – Conspiracy to defraud the United

States, 18 USC § 371, and Counts 3, 4, 7 and 8 – Fraud and False Statements, Aiding in the Preparation of a False Tax Return, 26 USC § 7206 and 18 USC § 2 (Presentence Report (PSR) ¶ 1). The charges stem from Ms. Stephens' employment as an Office Manager for Triad Business Service ("Triad"), which was owned and operated by her estranged husband and co-defendant Henderson Joseph.[1] Triad was a tax return preparation business offering tax preparation and accounting services to the general public with locations in Baltimore, Maryland, Washington D.C., and Richmond, Virginia. On May 30, 2007, pursuant to a written plea agreement, Ms. Stephens entered a plea of guilty to Count One of the Indictment. Sentencing is scheduled for August 24, 2007.

## II.   Personal Background

### A.   Family

As set forth in the PSR, Marcelle Stephens is thirty-three years old. She came to the United States from Trinidad in 1984. Following graduation from Archbishop Carroll High School, she attended Georgetown University in 1992 for one year (PSR ¶¶49-50). Ms. Stephens withdrew from Georgetown University for financial reasons. Her parents relationship deteriorated because of alcohol and abuse, and she and her brother resided with her mother and began working to contribute to the household (PSR ¶ 33).

In 1991, Ms. Stephens began a relationship with Damian Radway. The relationship ended in 1994, and the couple conceived one child Khary D. Radway, now age 13 (PSR ¶ 34). Ms. Stephens is the primary custodian for Khary, and has for the past nine (9) years been the sole financial provider. Unfortunately, Ms. Stephens found out that she was unable to conceive more

---

[1] At the time of the offense, Ms. Stephens and Mr. Joseph were not married. The parties were married on October 30, 2002 and separated on or about July 2005.

2

children, and began the process for adoption as a single mother. Khai Amoy Joseph, currently age 5 was placed with Ms. Stephens in 2002, and ultimately adopted by Henderson Joseph (PSR ¶ 38).

Ms. Stephens began her romantic relationship with Mr. Joseph, one year after the start of her employment at Triad (1996), despite the fact that he is twenty years older. While the relationship had its ups and downs, Ms. Stephens continued to work at Triad, being promoted in part due to her relationship with Mr. Joseph. As stated earlier, Ms. Stephens married Mr. Joseph in Antigua, West Indies in October 2002. That same year, Mr. Joseph underwent prostate cancer surgery and moved back to Antigua where he would be surrounded by his family. As his wife, Ms. Stephens and the children joined him.

While in Antigua, Ms. Stephens realized that Mr. Joseph was not the faithful husband she thought him to be, and finding herself increasingly unhappy, she returned to the United States. It was upon her return to the United States that Ms. Stephens learned an Indictment had been returned against her. Ms. Stephens voluntarily surrendered herself, and in one of the most painful experiences in her life, was placed in shackles and in a jail cell.

**B.      Education**

Since returning to the United States and facing these legal challenges, Ms. Stephens has tried very hard to maintain a sense of normalcy for herself and her children. She enrolled in the National School of Technology and earned a diploma in Medical Assisting. (*See* Ex. A.) One of the highlights of this experience was that Ms. Stephens graduated as the Valedictorian for the 2006-2007 graduating class. (*See* Ex. B.) As the Director of Career Services stated, "It is also a pleasure for us to realize your outgoing personality, ambitious nature, and commitment to education compliment your academic excellence." (*Id.*) Ms. Stephens has also continued to

3

achieve academic success through her recent, successful passage of the nursing entrance examination, and her ultimate acceptance into the nursing program at Keiser University. (*See* Ex. C.)

### C. Characteristics of Marcelle Stephens

Individuals who know Marcelle Stephens on a personal basis have written letters to the Court in an effort to allow the Court an opportunity to better understand her. The letters portray a wonderful mother, daughter, sister, relative and friend who is very active in her children's lives, a companion for her ailing mother, and someone who is deeply remorseful about the conduct which forms the basis for this case. The letters uniformly express optimism about Marcelle Stephens' future as a law abiding and productive member of our society and we discuss several herein.

Bernice Stephens-Alleyne, her mother writes:

> I ask that you see her as she really is – a person of excellent character, of substance, of faith, of growth; a person who will do what is necessary to satisfy the conditions of the law and earn a new place for herself.

(Attached hereto as Ex. D.)

Ms. Stephens' brother, Mark Stephens, who currently resides in Denmark, emotionally describes his sister Marcelle, "…[as a person] who gives without hesitation and revels in the joy that it brings both to others and to herself." He also knows her to be "a dedicated mother, a loving sister, and a dutiful daughter … an example of the selfless love that parents ought to bestow on their children…" (Attached hereto as Ex. E.)

Another family member describes Ms. Stephens as "…always happy, outgoing, and trustful of people, giving everyone the benefit of the doubt….Marcelle deserves a chance at continuing to be a positive and productive citizen of the community." (*See* Letter from Rae

4

Quam-Vie, attached hereto as Ex. F.) Ms. Stephens' aunt confirms: "[s]pirituality, respect for self, others and authority, integrity, self-discipline, gratitude and kindness are some of the traits that were reinforced in us as tools for life.... Marcelle needs to be given an opportunity to continue her excellent start..." (*See* letter from Eon Alleyne-McMayo, attached hereto as Ex. G.)

Other letters describing Ms. Stephens' character are attached collectively as Exhibit H.

### III. Application of Sentencing Reform Act Factors to the Sentence Determination

Based on the Supreme Court's ruling in *United States v. Booker*, 125 S. Ct. 738 (2005), this Court has wide discretion when deciding a defendant's sentence, so long as the sentence is reasonable and in keeping with the factors set forth in 18 U.S.C. § 3553(a), the Sentencing Reform Act ("SRA"). Additionally, the court must only consider the applicable sentencing guidelines as **one** of several factors set forth in the SRA when determining a defendant's sentence. *Id.* The SRA requires the Court to impose a sentence "sufficient, but not greater than necessary" to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2). 18 U.S.C. § 3553(a). Those purposes are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C. § 3553(a)(2).

Upon applying the SRA to the facts and circumstances of this case, Ms. Stephens respectfully requests that the Court make a finding that the Offense Level 14 guideline range is unwarranted and that a probationary sentence is a reasonable, sufficient and fair sentence. Furthermore a probationary sentence would be consistent with the other individuals who have entered into plea agreements in this case. Any period of incarceration would be an unreasonable punishment given the characteristics of Ms. Stephens.

**A.    Ms. Stephens role in the offense and the aberrant nature of her conduct.**

Two of the factors the Court should consider in imposing a sentence pursuant to 18 U.S.C. § 3553 are, "the nature and circumstances of the offense and the history and characteristics of the defendant." While it is true that Ms. Stephens voluntarily engaged in the criminal activity to which she has pleaded guilty, it is significant that her role in the offense, as agreed to by the government, is a minor role (PSR ¶ 5). As stated in the numerous letters from family, the aberrant nature of Ms. Stephens' behavior is supported by the fact that Ms. Stephens does not have a criminal history, and has been repeatedly described by her family and friends as a very giving, honest and caring individual.

Additionally, Ms. Stephens' role in this offense was minor. She continued to meet with clients, collect information and relevant documents and to forward the necessary information on to Mr. Joseph, a co-defendant for final preparation. Ms. Stephens knew that deductions were being taken where supporting documentation had not been collected. In the interest of brevity and in recognition of the Court having heard Ms. Stephens admit under oath acceptance of responsibility for her conduct, we wish only to inform the Court further that Ms. Stephens' conduct is clearly the result of a lapse in judgment that has never occurred before in how Ms. Stephens conducts herself, and has not occurred since. It is clear that Mr. Joseph was the leader

and Ms. Stephens was a follower. Ms. Stephens' behavior in this offense is consistent only with her willingness to suspend her good judgment for the approval of someone she loved and admired.

As reflected in the accompanying letters of reference from her family, Ms. Stephens is regarded as someone with high moral character, who has always conducted herself in a law-abiding manner. For example, Leslye Sanglade, an extended family member wrote:

> Marcelle has proven to be an honest person with integrity
> and high moral standards as her upbringing dictated…..She
> is a loyal and caring individual, loving mother who would
> leave no stone unturned for her children's wellbeing
> in all aspects of life, including, but not limited to discipline,
> education, and social and moral conduct.

(*See* Letter from Leslye Danglade, attached hereto as Ex. J.)

One family member describes Ms. Stephens as "…a mature, responsible individual who is honest and respectful of herself and others." (*See* Ex. F.) While another family member highlights the fact that "her warm and friendly smile, her light-hearted nature, and her innate honesty and trust are characteristics that attract people to her." (*See* Ex. G.)

**B.    Ms. Stephens acceptance of responsibility, plea of guilty and commitment to rehabilitation.**

Significantly, Ms. Stephens has fully accepted responsibility for her actions. She pled guilty on May 31, 2007, and has expressed shame and remorse. She told the Probation Officer that "… she "knew it was wrong" and she wished she had not participated in the scheme." Ms. Stephens has agreed to pay restitution as part of her plea agreement with the government. However, because of her current financial situation, and because the status of the co-defendant case is undetermined, the amount of restitution that each may be expected to pay has not yet been allocated.

7

Ms. Stevens has repeatedly expressed regret for her actions. She has accepted a felony conviction, and has done so in a timely manner, and has had to accept the impact her actions have had on her children, as they now have a mother who is in fear of the possibility of incarceration.

In addition to accepting responsibility for her conduct, Ms. Stephens has also demonstrated an extraordinary commitment to rehabilitation. As discussed above, she began pursuing her educational goals despite the fact that this matter is still pending and her freedom uncertain. She has moved in with her mother, and with family support and encouragement has tried to rebuild a life for herself and her children. Ms. Stephens recently completed medical assistant training through the National School of Technology, and has passed the nursing entrance examination. She learned on August 8, 2007, that she has been accepted into the nursing program at Keiser University. If this Court is inclined to sentence Ms. Stephens to a period of probation, on Monday, August 26, 2007, Ms. Stephens will begin, if allowed, classes in the nursing program. A period of incarceration will only prohibit Ms. Stephens, a citizen striving to better herself and her community, from using her training for the benefit of society. We respectfully submit that it is evident from her post-offense conduct and the letters submitted to the Court on her behalf, that Ms. Stephens will not be a recidivist.

Additionally, Ms. Stephens has never used or experimented with any illegal substances, has never had an addiction to alcohol or any other illegal substance, and has never been convicted of any other offense. She is not a violent person and poses no threat, now or in the future to society. A period of incarceration would only harm society, by removing from it a member attempting to rebuild her life, and to use her talents to benefit those around her. On

August 24, 2007, Ms. Stephens will stand before this Court having already suffered tremendously.

### C. A sentence of incarceration will have devastating financial and emotional effect on Ms. Stephens' family, most importantly, her two children and should warrant a downward departure.

United States Sentencing Guidelines section 5H1.6 states that "[f]amily ties and responsibilities and community ties are not <u>ordinarily</u> relevant in determining whether a sentence should be outside the applicable guideline range." U.S.S.G. § 5H1.6, p.s. (emphasis added). It is now well-settled that a § 5H1.6 is not a prohibition, but rather an indication that exceptions should be invoked where the circumstances are not "ordinarily" or "generally" present. *United States v. Gaskill*, 991 F.2d 85, 82 (3d Cir. 1983); *United States v. Monaco*, 23 F.3d 793, 801 (3d Cir. 1994) (recognizing that "not ordinarily relevant" is not synonymous with "never relevant" or "not relevant"").

Ms. Stephens is an indispensable contributor to her family, both financially and emotionally. As set forth in the PSR, Ms. Stephens is currently employed as a medical assistant at the University of Miami Student Health Center where she earns $11.00/ per hour (PSR ¶52). Her mother, who retired in 2004, returned to work to assist Ms. Stephens with the care of the children and household since the inception of these legal proceedings. (*See* Ex. D.) Ms. Stephens' family would lose her income, and Ms. Stephens' mother would be saddled with the expenses of running a household on her own, and raising her two grandchildren when she herself is not in the best of health. (*See* Ex. J.)

Notwithstanding the financial devastation incarceration would have on this family, the emotional devastation would be substantial and possibly permanent. The thought of Khary and

9

Khai not having their mother in their daily life, for even a short period of time, is unfathomable. As Glimour Stephens, Ms. Stephens' father, wrote:

> If Marcelle [is] granted a second chance, she will once again become the exemplary person she has been to her mother and me, and to all who know her, and most of all to her two children. For Marcelle and Marcelle's children's sake… give her an opportunity to stay with her children.

(Attached hereto as Ex. K.)

Additionally, as family friend Mortimer F. Coward wrote:

> [f]or Marcelle's children, separation from their mother would have incalculable psychological consequences. Marcelle is a good and wonderful human being who deserves a second chance.

(Attached hereto as Ex. L.)

Courts have looked to other factors when considering how extraordinary family circumstances and responsibilities should be factored into a sentence. In *United States v. Pena*, 930 F.2d 1486 (10th Cir. 1991), the court affirmed a downward departure of 8 offense levels for a defendant convicted of possession with intent to distribute marijuana and facing a range of 27 to 33 months. The court concluded that the departure was justified because, in addition to unusual family circumstances (two infants who would be deprived of defendant's support if incarcerated), the defendant's behavior was an "aberration" from her usual conduct. *Id.* at 1494-95.

Other courts have recognized similar grounds for departure and have affirmed lower courts' grant of departure. *See, e.g. United States v. Galante*, 111 F.3d 1029, 1034-37 (2d Cir. 1997) (13-level downward departure warranted where defendant, with no criminal record, was married with two young children, his wife had limited earning capacity, and he was the primary source of financial support for the family); *United States v. Johnson,* 964 F.2d 124, 126-130 (2d Cir. 1992) (extraordinary family circumstances justified 13-level departure in offense level for

defendant convicted of conspiracy, bribery, and theft of public money since defendant was solely responsible for upbringing of three young children which amounted to extraordinary responsibilities); *United States v. Gerard,* 782 F. Supp. 913, 914-15 (S.D.N.Y. 1992) (downward departure to probation based on family circumstances of defendant recognized by friends, family and community religious leaders as a model parent of two teenagers, and who is totally devoted to her children, despite offense level of 20).

This is Ms. Stephens first and only offense, a non-violent offense. There has been no suggestion that Ms. Stephens has a violent nature, and the offense with which she is charged – conspiracy- is not classified as a violent crime, when the underlying offense is aiding in the preparation of a false tax return. Thus, the concerns to protect the public from violence or serious transgressions is not present in this case. Ms. Stephens is not a danger to the community and is not likely to commit future crimes. In addition, Ms. Stephens is a productive individual and has worked and lived in accordance with societal norms and the law since this offense occurred. Further, a sentence of incarceration is not necessary to afford adequate deterrence to criminal conduct. Others will certainly be deterred by the fact that Ms. Stephens has now been convicted of a felony and will likely have to make substantial restitution and bear the stigma of a conviction for the rest of her life. Moreover, Ms. Stephens has already begun seeking the educational goals that this Court would envision for her. Lastly, the lack of any end to be served by imprisonment other than punishment, the lack of any threat to the community – indeed, the benefit to the community by allowing Ms. Stephens to take care of her children and her mother and to work and attend school - are all factors that warrant a sentence of probation.

IV. **Conclusion**

For the reasons set forth above, we respectfully and humbly request that the Court impose

11

a sentence of probation for Ms. Stephens, or, in the alternative a period of home detention with work release. Such a sentence is in accordance with the factors set forth in the Sentencing Reform Act, and allows Ms. Stephens the opportunity to stay with her children and to be a productive member of society once more. If there was ever an individual who deserves the discretion of this Court in fashioning a sentence of probation, it is Marcelle Stephens.

Dated: August 14, 2007                              Respectfully Submitted,

/s/ _____
Shawn M. Wright  (DC Bar # 458377)
wright@blankrome.com
BLANK ROME LLP
600 New Hampshire Ave.
Washington D.C. 20008
(202) 772-5800

William R. Martin  (DC Bar # 465531)
billy.martin@sablaw.com
SUTHERLAND ASBILL & BRENNAN LLP
1275 Pennsylvania Ave., NW
Washington, D.C. 20004
(202) 383-0100